# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

KENNETH B. HERMAN,               )
                                 )
          Plaintiff,    )
                                 )
v.                               )   Case No. CIV-17-152-SPS
                                 )
COMMISSIONER of the Social       )
Security Administration,         )
                                 )
          Defendant.    )

## OPINION AND ORDER

The claimant Kenneth B. Herman requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration ("Commissioner") pursuant to 42 U.S.C. § 405(g). The claimant appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining he was not disabled. For the reasons discussed below, the Commissioner's decision is REVERSED and REMANDED for further proceedings.

## Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the

national economy[.]" *Id*. § 423 (d)(2)(A).  Social security regulations implement a five-step sequential process to evaluate a disability claim.  *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied.  *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997).  Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996).  The Court may not reweigh the evidence or substitute its discretion for the Commissioner's.  *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991).  But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight."

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities. *Id*. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity, or if his impairment is not medically severe, disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. pt. 404, subpt. P, app. 1. If the claimant suffers from a listed impairment (or impairments "medically equivalent" to one), he is determined to be disabled without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must establish that he lacks the residual functional capacity (RFC) to return to his past relevant work. The burden then shifts to the Commissioner to establish at step five that there is work existing in significant numbers in the national economy that the claimant can perform, taking into account his age, education, work experience and RFC. Disability benefits are denied if the Commissioner shows that the claimant's impairment does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

*Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

**Claimant's Background**

The claimant was fifty-three years old at the time of the most recent administrative hearing (Tr. 39-40). He has a high school equivalent education, vocational training in security and truck driving, and has worked as a truck driver (Tr. 40, 308). The claimant alleges he has been unable to work since March 3, 2013, due to problems with his left shoulder, ankle pain, and high blood pressure (Tr. 251, 307).

**Procedural History**

On June 25, 2013, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85 (Tr. 251-58). His applications were denied. ALJ Ralph Shilling held an administrative hearing and found the claimant disabled in a written decision dated May 26, 2015 (Tr. 101-08). The Appeals Council remanded the case on October 29, 2015 (Tr. 111-16). On remand, ALJ Ralph Shilling conducted another administrative hearing and found that the claimant was not disabled in a written opinion dated January 3, 2017 (Tr. 17-28). The Appeals Council denied review, so the ALJ's January 2017 written opinion is the final decision of the Commissioner for purposes of this appeal. *See* 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant had the residual functional capacity ("RFC") to perform a limited range of light work, *i. e.,* he could lift and/or carry twenty pounds occasionally and ten pounds frequently; could sit/stand/walk for six hours in an eight-hour work day; could frequently handle and finger on the left; could occasionally reach on the left; could never climb or use ladders, ropes, or scaffolds; and must avoid concentrated exposure to hazards, hazardous machinery, and vibration (Tr. 22). The ALJ then concluded that although the claimant could not return to his past relevant work, he was nevertheless not disabled because there was work he could perform in the national economy, *e. g.*, rental clerk, merchandise marker, and garment bagger (Tr. 26-27).

## Review

The claimant contends that the ALJ erred by failing to properly evaluate the opinions of treating physician Dr. John Hoskins and physical therapist Lisa Beamer. The Court agrees, and the Commissioner's decision must therefore be reversed and remanded for further proceedings.

The ALJ found that the claimant had the severe impairments of left rotator cuff tear, osteoarthritis, and hypertension (Tr. 19). The medical evidence relevant to this appeal reveals that the claimant presented to Dr. Hoskins on June 6, 2013, and reported left shoulder pain that began when he injured it driving a truck without power steering several years earlier, and left ankle pain that also began years earlier with a "twisting" injury

(Tr. 376). X-rays of the claimant's left shoulder taken that day revealed acromioclavicular joint mild arthrosis, and x-rays of his left ankle revealed no acute findings (Tr. 379-80). Dr. Hoskins diagnosed the claimant with, *inter alia*, osteoarthritis of the left shoulder and left ankle pain with no red flags on exam, prescribed an anti-inflammatory, and recommended physical therapy and steroid injections for the claimant's shoulder (Tr. 377). At a follow-up appointment on November 7, 2013, Dr. Hoskins administered a steroid injection to the claimant's left shoulder, again recommended physical therapy, and referred him for an MRI, the results of which revealed: (i) focal partial thickness intrasubstance insertional tear of the far anterior supraspinatus tendon, (ii) degenerative fraying of the posterior superior labrum, and (iii) acromioclavicular joint osteoarthritis (Tr. 392).

On November 7, 2013, Dr. Hoskins complete a Medical Source Statement ("MSS") in connection with the claimant's application for tribal financial assistance wherein he opined that the claimant was limited to sedentary work due to left shoulder pain (Tr. 401). Dr. Hoskins completed similar statements in March 2014, May 2014, October 2014, March 2015, and July 2016 (Tr. 398-400, 403, 421).

On January 2, 2014, the claimant presented to physical therapist Bethany Patterson and reported that the steroid injection helped "for a little bit," but that his pain had returned (Tr. 390). Ms. Patterson noted that the claimant did not want to do any exercises and that he denied evaluation for his left shoulder (Tr. 390).

Dr. Krishnamurthi conducted a consultative physical examination of the claimant on December 14, 2015 (Tr. 405). Dr. Krishnamurthi found that the claimant had full range

of motion in his ankles and in his right shoulder, but that his range of motion was "much reduced" in his left shoulder due to pain (Tr. 406). Dr. Krishnamurthi's diagnosed the claimant with chronic left shoulder pain, obesity, chronic left ankle pain, and left partial rotator cuff injury (Tr. 407).

Dr. Krishnamurthi also completed a MSS on December 14, 2015 (Tr. 408). He opined that the claimant could lift/carry up to fifty pounds occasionally, up to twenty pounds frequently, and up to ten pounds continuously with his right arm; and could lift/carry up to twenty pounds occasionally, and up to ten pounds frequently with his left arm (Tr. 408). Additionally, Dr. Krishnamurthi opined that in an eight-hour workday, the claimant could sit for two hours at a time for eight hours total, and could stand/walk for one hour at a time for three hours total (Tr. 409). As to the claimant's use of his hands, Dr. Krishnamurthi indicated he could frequently reach, handle, finger, feel, and push/pull with his right hand; and could occasionally reach, and frequently handle, finger, feel, and push/pull with his left hand (Tr. 410). Dr. Krishnamurthi also opined that the claimant could frequently operate foot controls bilaterally (Tr. 410). As to postural activities, he found the claimant could frequently climb stairs and ramps, balance, stoop, kneel, crouch and crawl, and could occasionally climb ladders and scaffolds (Tr. 411). Regarding environmental limitations, Dr. Krishnamurthi found the claimant could frequently tolerate unprotected heights, moving mechanical parts, operating a motor vehicle, humidity and wetness, dust, odors, fumes, pulmonary irritants, extreme heat and cold, and vibrations; and could tolerate moderate noise such as that found in an office (Tr. 412).

Lisa Beamer, a physical therapist, completed a functional capacity evaluation on April 15, 2016 (Tr. 424-34). She found that the claimant could perform light work, but indicated that lifts over five times per day at that level would place him at significant medical risk (Tr. 434). As a result, she recommended light work with occasional lifting up to sixteen pounds, frequent lifting up to ten pounds, and constant lifting up to four pounds (Tr. 434). Ms. Beamer noted that many of the movements the claimant demonstrated throughout the exam were very exaggerated, and that he reported his primary area of pain and dysfunction was his left shoulder, but was unable to perform activities involving cervical or lumbar motions (Tr. 434).

On January 9, 2014, state agency physician "LMW, MD" reviewed the record and found that the claimant could perform light work, but was limited in his ability to reach overhead with his left arm (Tr. 83-86).

At the first administrative hearing, the claimant testified that he was unable to lift his left arm in front without feeling a sharp pain in his shoulders, and that some mornings he is unable to turn his head all the way to the left (Tr. 51). As to his left ankle, he stated that his pain medication has improved his pain, but he could no longer wear tennis shoes because of instability (Tr. 52). As to specific limitations, the claimant testified that he could sit for twenty or thirty minutes before needing to get up due to pain, could stand for fifteen minutes before experiencing pain in his shoulders and back, but did not have any problems walking (Tr. 54). At the second administrative hearing, Dr. Krishnamurthi testified that the claimant could lift with his left arm occasionally in all directions, could

frequently handle and finger with his left hand, and was limited to lifting ten pounds frequently and twenty pounds occasionally on the left (Tr. 37-38).

In his written opinion, the ALJ summarized the claimant's testimony and the medical evidence. He declined to assign controlling weight to any acceptable treating medical source, but performed no analysis in this regard (Tr. 25). The ALJ then assigned partial weight to Dr. Hoskins' opinion that the claimant was limited to sedentary work, finding such conclusion was inconsistent with the medical record, his own treatment notes, and the December 2013 left shoulder MRI (Tr. 25). He gave partial weight to Ms. Beamer's functional capacity evaluation, but provided no analysis of her opinion (Tr. 25). The ALJ then gave "weight" to Dr. Krishnamurthi's consultative opinion to the degree that it was consistent with the assessed RFC (Tr. 25).

The medical opinions of treating physicians such as Dr. Hoskins are entitled to controlling weight if "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "consistent with other substantial evidence in the record." *Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004), *quoting Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003). When a treating physician's opinion is not entitled to controlling weight, the ALJ must determine the proper weight to give it by considering the following factors: (i) the length of the treatment and frequency of examinations, (ii) the nature and extent of the treatment relationship, (iii) the degree of relevant evidence supporting the opinion, (iv) the consistency of the opinion with the record as a whole, (v) whether the physician is a specialist, and (vi) other factors supporting or contradicting

the opinion. *Watkins*, 350 F.3d at 1300-01, *citing Drapeau v. Massanari,* 255 F.3d 1211, 1213 (10th Cir. 2001). If the ALJ decides to reject a treating physician's opinion entirely, he is required to "give specific, legitimate reasons for doing so." *Id.* at 1301. In sum, it must be "clear to any subsequent reviewers the weight the [ALJ] gave to the treating source's medical opinion and the reasons for that weight." *Id.* at 1300, *citing* Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *5 (July 2, 1996). Here, the ALJ summarized Dr. Hoskins' treatment notes and opinion, but provided no analysis at all in relation to the pertinent factors. Additionally, the ALJ rejected his opinion, in part, because it was inconsistent with his own treatment notes and the medical record as a whole. This would have been a legitimate reason for rejecting his opinion if the ALJ had specified the inconsistencies to which he was referring. *See, e.g., Langley,* 373 F.3d at 1123 ("Because the ALJ failed to explain or identify what the claimed inconsistencies were between Dr. Williams's opinion and the other substantial evidence in the record, his reasons for rejecting that opinion are not 'sufficiently specific' to enable this court to meaningfully review his findings."), *quoting Watkins,* 350 F.3d at 1300. *See also Wise v. Barnhart,* 129 Fed. Appx. 443, 447 (10th Cir. 2005) ("The ALJ also concluded that Dr. Houston's opinion was 'inconsistent with the credible evidence of record,' but he fails to explain what those inconsistencies are.") [citation omitted].

The claimant also argues that the ALJ failed to properly consider Ms. Beamer's April 2016 functional capacity evaluation. Social Security regulations provide for the proper consideration of "other source" opinions such as the opinion provided by Ms.

Beamer herein. *See, e. g., Frantz v. Astrue*, 509 F.3d 1299, 1302 (10th Cir. 2007) (noting that other source opinions should be evaluated with the relevant evidence "on key issues such as impairment severity and functional effects" under the factors in 20 C.F.R. §§ 404.1527, 416.927), *quoting* Soc. Sec. Rul. 06–03p, 2006 WL 2329939 at *3, *6 ("[T]he adjudicator generally should explain the weight given to opinions from these 'other sources,' or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case."). The factors for evaluating opinion evidence from "other sources" include: (i) the length of the relationship and frequency of contact; (ii) whether the opinion is consistent with other evidence; (iii) the extent the source provides relevant supporting evidence; (iv) how well the source's opinion is explained; (v) whether claimant's impairment is related to a source's specialty or area of expertise; and (vi) any other supporting or refuting factors. *See* Soc. Sec. Rul. 06–03p, at *4–5; 20 C.F.R. §§ 404.1527(f), 416.927(f). Here, the ALJ summarized Ms. Beamer's opinion at step two, and assigned it partial weight at step four, but wholly failed to perform any analysis of these factors. *See, e. g., Anderson v. Astrue*, 319 Fed. Appx. 712, 718 (10th Cir. 2009) ("Although the ALJ's decision need not include an *explicit discussion* of each factor, the record must reflect that the ALJ *considered* every factor in the weight calculation."). Additionally, the ALJ adopted Ms. Beamer's opinion that the claimant could perform light work. He nevertheless failed to acknowledge her opinion that the claimant could only safely lift up to sixteen pounds, because she also found that lifting

at the light work level more than five times per day would put the claimant at significant medical risk. The ALJ thus engaged in picking and choosing among Ms. Beamer's opinion, which was also error. *See, e. g., Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004) (noting that the ALJ may not "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence."), *citing Switzer v. Heckler*, 742 F.2d 382, 385–86 (7th Cir. 1984) ("Th[e] report is uncontradicted and the Secretary's attempt to use only the portions favorable to her position, while ignoring other parts, is improper.").

Because the ALJ failed to properly evaluate the medical evidence, the decision of the Commissioner is therefore reversed and the case remanded to the ALJ for further analysis. If such analysis results in any changes to the claimant's RFC, the ALJ should re-determine what work the claimant can perform, if any, and ultimately whether she is disabled.

## Conclusion

In summary, the Court FINDS that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. The Commissioner's decision is accordingly REVERSED and the case REMANDED for further proceedings consistent herewith.

**DATED** this 24th day of September, 2018.

_____
**STEVEN P. SHREDER
UNITED STATES MAGISTRATE JUDGE**